Winlaw A. PRIEBE, Plaintiff,

v.

WORLD VENTURES, INC., a corporation, et al., Defendants.

No. CV 75–1844–F.

United States District Court, C. D. California.

Feb. 23, 1976.

David P. Bergland, Bergland, Martin & McLaughlin, Newport Beach, Cal., for plaintiff.

Howard L. Prescott, Gleckman & Prescott, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER TO COMPEL ANSWERS

FERGUSON, District Judge.

Plaintiff Winlaw A. Priebe has moved for an order compelling defendants World Ventures, Inc., Robert Gallagher, Lowell I. Skow and Stanton Hollingsworth to answer questions put to them by plaintiff's counsel upon oral deposi-

tion and to answer written interrogatories.

The defendants in response have conceded that World Ventures, Inc.'s corporate status deprives it of any right to invoke the privilege against self-incrimination (*see, e.g., Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911)), but maintain that the same privilege protects each of the remaining defendants from answering questions. Essentially the defendants contend that the allegations contained in the plaintiff's complaint involving federal and state securities violations could support an action for criminal liability. The plaintiffs resist the defendants' position by insisting that the privilege may be invoked only upon a showing that there is a "reasonable basis" for believing that "incriminating evidence would be revealed" and that the privilege must be applied only to specific questions asked.

 It is settled that the fifth amendment privilege against self-incrimination applies in civil proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924). The test for determining the application of the privilege, however, has been variously stated. The United States Supreme Court in *United States v. Kordel*, 397 U.S. 1, 9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1969) stated the historic view that the privilege cannot be invoked without a demonstration of a "real and appreciable" risk of self-incrimination. *See, e.g., Minor v. United States*, 396 U.S. 87, 98, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969); *Leary v. United States*, 395 U.S. 6, 16, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The question of what constitutes a "real and appreciable" risk has often confronted the courts, and the term has been interpreted in a fashion designed to fully protect individual rights. McCormick in his treatise on Evidence states that "the now prevailing

general judicial attitude [is] that almost any conceivable danger is 'real and appreciable.'" § 123, at 263 (2d ed. E. Cleary 1972). And Wright and Miller observe that, "In many of the cases in which the issue has arisen criminal charges involving the same occurrences are already pending against the party, but this is not the measure of the privilege, and it is available even if the risk of criminal prosecution is remote." 8 *Federal Practice and Procedure* § 2018, at 141 (1970). These renditions are entirely consistent with the test applied by the Supreme Court in *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951) (emphasis in original), *quoting Temple v. Commonwealth*, 75 Va. 892, 898 (1881): "In this setting it was not 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *See, e.g., Guy v. Abdulla*, 58 F.R.D. 1, 2 (N.D.Ohio 1973), *de Antonio v. Solomon*, 42 F.R.D. 320, 323 (D.Mass. 1967). Clearly in this setting, where the civil charges dovetail with those which could give rise to criminal sanctions, the risk of criminal prosecution cannot be characterized as "imaginary and insubstantial," (*Minor v. United States, supra*, 396 U.S. at 98, 90 S.Ct. 284) without a possibility of a "tendency" to incriminate (*Hoffman v. United States, supra*, 341 U.S. at 488, 71 S.Ct. 814), "trifling" (*Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968)), or "purely fantastic" (*de Antonio v. Solomon, supra*, 42 F.R.D. at 323).

Plaintiffs argue, however, that the defendants cannot issue a blanket refusal to answer questions[1] but must make a particularized showing with respect to each of the questions asked. In this connection, they cite *Capitol Products Corporation v. Hernon*, 457 F.2d 541 (8th Cir. 1972). There a plaintiff judgment

---

1. The defendants, of course, have agreed to attend depositions and invoke the privilege after each question asked. One deposition in which sufficient questions to build a record for purposes of this motion has already taken place.

creditor asked questions designed to reveal the assets of the defendant in an effort to assist in the execution of the judgment. The defendant, apparently concerned about the criminal tax consequences of full disclosure, refused to answer any questions, citing the privilege against self-incrimination. The Eighth Circuit held that the defendant could be required to specifically justify the claim of privilege with respect to each question. In *Hernon* it was clear that a blanket claim of privilege was inappropriate. It defied credulity to suppose that any and every question about the assets of the defendant created a risk of self-incrimination. In the absence of some more definite showing, the court properly held that the privilege was not properly invoked. But this case is radically different. Here any questions that could lead to discoverable evidence admissible in the civil proceeding could also provide "a link in the chain of evidence" needed in a criminal prosecution. *Blau v. United States*, 340 U.S. 159, 161, 71 S.Ct. 223, 224, 95 L.Ed. 170 (1950); *Malloy v. Hogan*, 378 U.S. 1, 11–12, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Here, unlike *Hernon*, any proper question in the civil context inherently gives rise to self-incrimination hazards.

 This, of course, does not mean that the plaintiffs are precluded from further discovery, for as mentioned previously, World Ventures, Inc. has no right to claim the fifth amendment privilege; and the corporation can be obliged to "appoint an agent who could, without fear of self-incrimination, furnish such requested information as [is] available to the corporation." *United States v. 3963 Bottles . . . of . . . "Enerjol*

*Double Strength,"* 265 F.2d 332, 336 (7th Cir. 1959). The Supreme Court in *Kordel* left open the question of what ruling would be appropriate in circumstances where the corporation could not appoint anyone who would not subject himself to the "real and appreciable" risks of self-incrimination. 397 U.S. at 1, 90 S.Ct. 763. It would be a rare event for such a situation to develop, for as Wright and Miller point out, "Rule 33(a) allows any agent of the corporation, even its attorney, to answer interrogatories on behalf of a corporation." 8 *Federal Practice and Procedure, supra*, § 2018 at 144. There is no reason to believe that such a situation is present here, but if a situation developed in which plaintiff's discovery rights were wholly frustrated by a claim of privilege, it might be appropriate to reexamine the showing necessary to invoke it. Such revaluation might necessitate a reformulation of the test to accommodate the respective interests involved. *Cf. California v. Byers*, 402 U.S. 424, 427, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) (plurality); id. at 454, 91 S.Ct. 1535 (Harlan, J., concurring). It is clear, however, at this point, that the privilege here has been properly invoked. *See Gellis v. Casey*, 338 F.Supp. 651 (S.D. N.Y.1972); J. Wigmore, 8 *Evidence* § 2257, at 339 (Rev. ed. McNaughton 1961).

It, therefore, is ordered that the plaintiff's motion is denied except insofar as it applies to World Ventures, Inc.

It is further ordered that the clerk serve copies of this memorandum and order by United States mail upon counsel for the parties appearing in this action.