**McINTYRE'S MINI COMPUTER SALES GROUP, INC., Plaintiff,**

v.

**CREATIVE SYNERGY CORPORATION, et al., Defendants.**

**Civ. A. No. MBD 87–82.**

United States District Court, D. Massachusetts.

March 30, 1987.

Francis Ortiz, Daryl Fryxell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for Creative Synergy, Manning, & Chalmers.

Ronald F. Kehoe, Edward C. Saltzberg, Warner & Stackpole, Boston, Mass., for Hanson Data Systems, Inc.

Elliot M. Weinstein, Boston, Mass., for deponent Joseph Vitka.

## ORDER RE: DEFENDANT HANSON DATA SYSTEMS, INC.'S MOTION TO COMPEL

PATTI B. SARIS, United States Magistrate.

This case, which is pending in the United States District Court for the Eastern Dis-

trict of Michigan, involves allegations of violations of Michigan's trade secrets law arising from the alleged theft of the plaintiff's confidential customer list by defendants Michael Van Brocklin and Creative Synergy Corporation and the alleged subsequent sale of such list to the other named defendants in the action.

Before this Court is a motion to compel filed by defendant Hanson Data Systems, Inc. ("Hanson Data") on February 9, 1987, regarding the deposition of a non-party witness, Joseph Vitka ("Vitka"), in Boston, Massachusetts on the same date. Specifically, Hanson Data moved pursuant to Fed. R.Civ.P. 37 for an order compelling Vitka to answer deposition questions and to produce all documents identified in the deposition subpoena. A hearing was held on February 9, 1987. On February 17, 1987, Hanson Data filed a renewed motion and accompanying memorandum with a transcript of the deposition. Vitka has opposed this motion. The trial court has issued an April 22, 1987 discovery cut-off date. The Court rules as follows:

### 1. Deposition Questions

At his deposition, Vitka refused on fifth amendment grounds to answer any questions beyond giving his name and address and acknowledging his receipt of the deposition subpoena. Even as a non-party witness in a civil case, Vitka was entitled to invoke his fifth amendment privilege against self-incrimination in the course of pretrial discovery. *de Antonio v. Solomon,* 41 F.R.D. 447, 449 (D.Mass.1966); *see also Gatoil, Inc. v. Forest Hill State Bank,* 104 F.R.D. 580, 581 (D.Md.1985); *E.F. Hutton & Co. v. Jupiter Development Corp. Ltd.,* 91 F.R.D. 110, 114 (S.D. N.Y.1981).

However, the Federal Rules of Civil Procedure do not contemplate a complete refusal to participate in any discovery pertaining to an action which may have criminal overtones. *de Antonio v. Solomon,* 41 F.R.D. at 449; *Gatoil, Inc. v. Forest Hill State Bank,* 104 F.R.D. at 581; *Guy v.*

*Abdulla*, 58 F.R.D. 1, 2 (N.D.Ohio 1973). By generally asserting the fifth amendment in response to virtually every deposition question, Vitka sought to exercise a privilege which would effectively shut the door to any pretrial discovery from him. Such a blanklet exercise of the privilege is insufficient to relieve Vitka of the duty to respond to the questions put to him. *See S.E.C. v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 668 (5th Cir.1981); *United States v. Gomez-Rojas*, 507 F.2d 1213, 1219–20 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *Carter-Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 553 F.Supp. 45, 50 (S.D.N.Y. 1982).

Rather, Vitka may invoke his fifth amendment privilege against self-incrimination only when "a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951); *de Antonio v. Solomon*, 41 F.R.D. at 449. The privilege afforded not only extends to answers that would in themselves support a conviction under a criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a crime. *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818.

It appears that, while some of the questions posed by Hanson Data in the deposition may ask for "dangerous" disclosures sufficient to justify Vitka's silence, many of the questions that Vitka refused to answer were innocuous inquiries. *See, e.g., United States v. Malnik*, 489 F.2d 682, 685 (5th Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974); *Carter-Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 553 F.Supp. at 50. For example, questions posed in the deposition concerning Vitka's general employment background, present employment, educational and military background and even his general contacts and dealings with the plaintiff do not appear, based on the record before the Court, to call for responses which would tend to furnish a link in the chain of criminal evidence against him. *See* Deposition Transcript, pp. 6–17, 22–23, 25–27, 42–43, 48–49, 54–55, 57–59.

■ Vitka argues that he did not answer these routine questions because of his concern that, if he did so, he would waive his privilege.[1] However, Vitka's answers to innocuous questions will not be deemed to constitute a waiver of his fifth amendment privilege since, to constitute a waiver, his responses must be "incriminating." *Rogers v. United States*, 340 U.S. 367, 372–75, 71 S.Ct. 438, 441–43, 95 L.Ed. 344 (1951); *E.F. Hutton & Co. v. Jupiter Development Corp. Ltd.*, 91 F.R.D. at 114. Accordingly, this Court orders Vitka to respond to those deposition questions posed by Hanson Data which would not elicit incriminating disclosures and which he refused to answer because of his concern with waiver.

A more difficult problem arises with respect to those questions which Vitka claims would incriminate him. This is due to the fact that the Court has an insufficient factual basis for evaluating question-by-question whether the testimony would pose a real and appreciable tendency to incriminate or whether Vitka's fear is merely remote or fanciful. *In re Kave*, 760 F.2d 343, 354 (1st Cir.1985). Vitka has told the Court that one named defendant in the action was prosecuted and convicted for his part in stealing the plaintiff's customer list and that he himself was advised that Hanson Data and a private investigator were considering filing a criminal complaint against him. Hanson Data has not disputed these factual assertions.

The Court recognizes the practical problems created by its limited knowledge of the facts. On the one hand, Vitka may not be exonerated from answering merely because he declares that he would incriminate himself by doing so; it is for the Court to

---

1. Hanson Data is willing to stipulate that any questions Vitka is ordered to answer will not constitute a waiver of any fifth amendment rights.

decide whether the silence is justified. *See Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818. On the other hand, if the Court requires Vitka to establish the "hazard of incrimination," Vitka may be compelled to give up the very protection which the fifth amendment privilege guarantees. *Id.* To draw the proper balance between these concerns, the Court will require Vitka to give his reasons for invoking the privilege with respect to each objectionable question he refuses to answer. However, Vitka may refer in general and circumstantial terms to such reasons; as long as sufficient reasons are given from which the Court may determine that a danger *might* exist, the privilege will be upheld. *See United States v. Melchor Moreno*, 536 F.2d 1042, 1046 (5th Cir.1976).

The Court instructs Vitka to submit within twenty (20) days from the date of this Order, a written response stating with respect to each question that he declines to answer, "the grounds of his objection and, wherever possible without incrimination, in what respect a responsive answer may have a tendency to incriminate him." *de Antonio v. Solomon*, 41 F.R.D. at 449–50. If requested, the Court will hold an *in camera* hearing.[2] The Court will at that time examine the specific questions objected to by Vitka to determine whether assertion of the privilege is justified.

### 2. *Production of Documents*

■ At his deposition, Vitka also refused on fifth amendment grounds to produce any documents identified in the deposition subpoena. The fifth amendment will extend to protect Vitka from the compelled production of incriminating personal records in his possession if the surrender of such documents amounts to a testimonial act. *In re Kave*, 760 F.2d at 356; *see*

also *de Antonio v. Solomon*, 42 F.R.D. 320, 323 (D.Mass.1967). The act of production will be considered testimonial if it compels Vitka to admit that the documents exist, that they are in his possession or that they are authentic. *United States v. Doe*, 465 U.S. 605, 612–14, 104 S.Ct. 1237, 1242–43, 79 L.Ed.2d 552 (1984); *see also Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.), *cert. dismissed*, —— U.S. ——, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). However, for the fifth amendment to apply, the documents must be held by Vitka in his personal capacity,[3] and not in his capacity as a representative or agent of a corporation or other collective entity. *See Rogers v. United States*, 340 U.S. at 371–72, 71 S.Ct. at 440–42. In addition, such documents must be incriminating. *Butcher v. Bailey*, 753 F.2d at 469. Therefore, although Vitka may refuse to produce incriminating, personal records which would compel him to admit by the act of production that such documents exist, are in his possession or are authentic, Vitka must produce the documents requested in the subpoena which are either not incriminating or which are held by him as a representative or agent of a corporation or other collective entity.

As discussed above with respect to the deposition questions, this Court has insufficient facts before it to determine which specific documents, if any, in Vitka's possession are entitled to protection under the fifth amendment. Recognizing again that it is placed in the dilemma of making a proper determination without requiring proof by Vitka of the "hazard of incrimination," the Court will not rule at this point on Hanson Data's motion to compel insofar as it concerns the production of documents. The Court will instead order Vitka to submit a written response within twenty (20)

---

**2.** The Court is aware that even *in camera* inquiries may in certain circumstances be found to violate the witness's fifth amendment privilege. *See, e.g., In re Brogna*, 589 F.2d 24, 28 (1st Cir.1978); *United States v. Melchor Moreno*, 536 F.2d at 1047. Therefore, if such a proceeding is held, the Court will make no further inquiry *in camera* if external facts support the privilege

claim or if shown that answers to the objectionable questions might be incriminating. *Id.*

**3.** Records held by Vitka in his capacity as an owner of a sole proprietorship will be considered records held in his personal capacity, to which the privilege may attach. *United States v. Doe*, 465 U.S. at 608–09, 612–14, 104 S.Ct. at 1239–40, 1242–43.

days from the date of this Order, to be examined if requested *in camera,* generally stating the grounds on which Vitka must be found to be holding the documents in his personal as opposed to representative capacity, and why the act of production of each document requested in the deposition subpoena might be incriminating. *See, e.g., Butcher v. Bailey,* 753 F.2d at 470. Vitka need only refer in general and circumstantial terms to his reasons for invoking the privilege. As long as sufficient reasons are given from which the Court may independently determine that a real and appreciable danger might exist, the privilege will be upheld. *See United States v. Melchor Moreno,* 536 F.2d at 1046.

SO ORDERED.